IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGNACROSS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-964 (MN) |
| | ) |
| GE MDS LLC, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Jimmy Chong, CHONG LAW FIRM, Wilmington, DE; David R. Bennett, DIRECTION IP LAW, Chicago, IL – attorneys for Plaintiff

Arthur G. Connolly, III, Stephanie S. Riley, Brandon R. Harper, CONNOLLY GALLAGHER LLP, Wilmington, DE; Marla R. Butler, Jonathan Nussbaum, THOMPSON HINE LLP, Atlanta, GA – attorneys for Defendant

November 10, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 12) of Defendant GE MDS LLC ("Defendant" or "GE MDS") to dismiss or, in the alternative, to transfer this case to the Western District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Defendant's motion is DENIED.

## I. BACKGROUND

Plaintiff Magnacross LLC ("Plaintiff" or "Magnacross") is a Texas Limited Liability Company with a principal place of business in McKinney, Texas. (D.I. 1 ¶ 1). Defendant is a Delaware Limited Liability Company with its principal place of business in Rochester, New York. (D.I. 14, Ex. A ¶ 3; *see also* D.I. 1 ¶ 2). On July 20, 2020, Plaintiff filed the present action, alleging that Defendant's MDS Orbit MCR-4G router infringes claim 1 of U.S. Patent No. 6,917,304 ("the '304 Patent"). (*See* D.I. 1 ¶¶ 9 & 13-19). On August 11, 2020, Defendant filed a motion dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff failed to adequately plead direct infringement of claim 1 because Plaintiff did not plausibly allege that Defendant performs each and every step of the claimed method. (*See* D.I. 12; *see also* D.I. 13 at 4-9). In the alternative, Defendant requests transfer of this action to the Western District of New York, where Defendant is headquartered and where development on the accused MDS Orbit device occurred. (*See* D.I. 13 at 9-20; *see also* D.I. 14). Plaintiff opposes Defendant's motion and briefing was complete on October 6, 2020. (*See* D.I. 19 & 21).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of*

1

*Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Nor is the Court required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2018 WL 1479027, at *3 (D. Del. Mar. 27, 2018). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

      B.    <u>Motion to Transfer Venue Under 28 U.S.C. § 1404(a)</u>

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Plaintiff's choice of location in bringing the action "should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In determining whether an action should be transferred under § 1404(a), the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The

3

Third Circuit has held, however, that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

### III.   DISCUSSION

#### A.   Motion to Dismiss for Failure to State a Claim

In its Complaint, Plaintiff alleges that Defendant's MDS Orbit MCR-4G ("the Accused Instrumentality")[1] directly infringes claim 1 of the '304 Patent – a method claim. (*See* D.I. 1 ¶ 13). Claim 1 recites:

> A method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels accordingly; characterized by:
>
> a) said step of division of said communications channel being effected asymmetrically whereby the data carrying capacities of said sub-channels are unequal; and
>
> b) the data rate required for data transmission from said local sensors differing substantially between said at least two sensors; and
>
> c) allocating data from said local data sensors to respective ones or groups of said sub-channels in accordance with the data carrying capacities of said sub-channels.

('304 Patent at Claim 1). According to Plaintiff, Defendant has directly infringed claim 1 "by actions comprising using (including through testing and demonstrations)" the Accused Instrumentality. (D.I. 1 ¶ 13). Plaintiff maps the claim language of the preamble and each claimed step onto Defendant's use of the Accused Instrumentality with citation to Defendant's product literature.[2] (*See, e.g.*, *id.* ¶¶ 13-14 (preamble), ¶ 15 (step (a)), ¶ 16 (step (b)), ¶ 17 (step (c))).

---

[1]   According to Defendant, the "correct designation" for the Accused Instrumentality is "MDS Orbit MCR." (*See* D.I. 13 at 1 n.1; *see also* D.I. 14, Ex. A ¶ 5).

[2]   Plaintiff incorporates by reference the materials cited in its Complaint. (*See* D.I. 1 at 4 n.1).

4

Defendant argues that Plaintiff has failed to adequately plead direct infringement of claim 1 because Plaintiff does not plausibly allege that Defendant performs step (c) of the claimed method.[3] (*See* D.I. 13 at 4-9). In particular, Defendant argues that Plaintiff has not plausibly alleged that use of the Accused Instrumentality allocates data to sub-channels as required by step (c) because Plaintiff only references allocation based on channels (*i.e.*, not sub-channels). (*Id.* at 5-6; *see also* D.I. 1 ¶ 17). Plaintiff responds that it has sufficiently pleaded that this element is met because the Complaint alleges that the Accused Instrumentality uses two different communication channels – 802.11b/g and 802.11n – that are divided into sub-channels and the device allocates data to an 802.11b/g channel (or to an 802.11n channel) based on data transmission rates. (*See* D.I. 19 at 8-9 (quoting D.I. 1 ¶¶ 14-16)). Plaintiff contends that, in Paragraph 17 of the Complaint, "an 802.11b/g channel" is "one of the 52 802.11b/g subchannels" referenced in Paragraph 15 of its Complaint.[4] (D.I. 19 at 8).

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to

---

[3]   Defendant's argument regarding the insufficiency of allegations for step (c) is the sole basis for the motion to dismiss under Rule 12(b)(6).

[4]   Paragraph 17 in the Complaint alleges that the Accused Instrumentality allocates data to "an 802.11b/g channel" when the device can only send data at the slower rate according to the 802.11b/g standard. (D.I. 1 ¶ 17). Plaintiff also argues that it is "evident from the complaint" that the Accused Instrumentality can allocate to the "higher capacity 802.11n channel (*i.e.*, one of the 56 802.11n subchannels)" when the faster data rate transmission of the 802.11n standard is used by the device. (D.I. 19 at 8).

withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s).  *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).  Where, as here, the asserted claim is a method claim, it is well-established that direct infringement exists only where there is performance of every step of the claimed method.  *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed. Cir. 2012) ("[D]irect infringement of a method claim requires a showing that every step of the claimed method has been practiced.").

Here, the Court finds that Plaintiff has adequately pleaded direct infringement of claim 1 of the '304 Patent.  Plaintiff specifically identifies Defendant's Orbit MCR product as the Accused Instrumentality and further alleges that Defendant used that device in a manner that purportedly infringes claim 1.  (*See* D.I. 1 ¶¶ 13-17; *see also id.* ¶ 13 (Defendant's use may include testing and demonstrations)).  Plaintiff goes through each limitation of claim 1 to show how Defendant's use of the Accused Instrumentality would plausibly result in performance of all the claimed steps. (*See id.* ¶¶ 13-17).  This is sufficient to put Defendant on notice as to how its use of the Accused Instrumentality constitutes direct infringement of claim 1.  *See, e.g.*, *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (finding claim of direct infringement sufficiently pled to "provide [defendants] fair notice of infringement" where complaint specifically identified accused products and alleged "using" of accused products that met "each and every limitation" of at least one claim).

As to Defendant's specific argument that Plaintiff fails to plausibly allege that Defendant has performed step (c) of claim 1 of the '304 Patent, the Court disagrees.  As an example, Plaintiff asserts that "when an 802.11b/g device communicates with the Accused Instrumentality, because the device can only send data at the data rate of the slower 802.11b/g standard, the Accused

Instrumentality assigns the 802.11b/g device to an 802.11b/g channel." (*Id.* ¶ 17). One plausible inference from this allegation is that the Accused Instrumentality allocates data in the manner required by step (c) of claim 1. *See Bill of Lading*, 681 F.3d at 1340 ("Nothing in *Twombly* or its progeny allows a court to choose among competing inferences as long as there are sufficient facts alleged to render the non-movant's asserted inferences plausible."). Defendant's argument about the distinction between "channel" and "sub-channel" seems to turn on an issue of claim construction – *i.e.*, whether "an 802.11b/g channel" (or "an 802.11n channel") may be one of the "sub-channels" recited in step (c). (*See* D.I. 21 at 4-5). The Court declines to reach issues of claim construction in ruling on a motion to dismiss. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) ("But Defendants' arguments boil down to objections to Nalco's proposed claim construction for 'flue gas,' a dispute not suitable for resolution on a motion to dismiss.").

In sum, the Court finds that Plaintiff has plausibly alleged that Defendant's use of the Accused Instrumentality results in performance of all steps of claim 1 of the '304 Patent, thereby stating a claim of direct infringement. Defendant requests that this case be transferred to the Western District of New York in the event the Court does not dismiss the Complaint. Having found dismissal not warranted, the Court now turns to Defendant's request to transfer venue.

### B.  Motion to Transfer Venue Under 28 U.S.C. § 1404(a)

As an initial matter, the Court addresses the threshold inquiry under § 1404(a) – *i.e.*, whether this action might have originally been brought in the transferee district. Defendant argues that this action could have originally been brought in the Western District of New York, which is where Defendant's regular and established place of business is located and also where Defendant conducts research and development, manufactures, tests and sells its products (including the

7

accused MDS Orbit product).[5]  (D.I. 13 at 10; *see also* D.I. 14, Ex. A ¶ 4).  There is no dispute that Defendant's principal place of business is in the Western District of New York.  (D.I. 1 ¶ 2). Moreover, Plaintiff does not dispute that the case could have originally been brought in that district.  (*See* D.I. 19 at 10-11).  Thus, the threshold inquiry under § 1404(a) is satisfied and the only issue before the Court is whether to exercise its discretion under § 1404(a) to transfer the case to that district.  The Court addresses the *Jumara* factors in turn below.

          1.      Plaintiff's Forum Preference

This factor weighs against transfer.  "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed."  *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer."  *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendant recognizes that Plaintiff's choice was to litigate in Delaware and that choice is "ordinarily afforded deference."  (D.I. 13 at 11).  Defendant nevertheless argues that this choice should be given less weight than it would if Delaware were Plaintiff's home forum.  (*Id.* at 12). Defendant also argues that Plaintiff's choice should be afforded less deference because Plaintiff initially sued Defendant in the Northern District of Illinois.  (*Id.*).  In Defendant's view, that Plaintiff is a Texas Limited Liability Company headquartered in Texas that first sued elsewhere means Plaintiff's choice to litigate here should be given deference "at its lowest ebb."  (*Id.*).

---

[5]      Defendant – a Delaware Limited Liability Company – does not dispute that venue is proper in this District or that personal jurisdiction exists here.

Plaintiff argues that its choice of forum remains entitled to "paramount consideration" regardless of its connections to Delaware and its initial choice to file suit in Illinois. (D.I. 19 at 13; *see also id.* at 11-13).

The Court agrees with Plaintiff. Although Plaintiff's choice of forum is not dispositive, the Court will "not discount Plaintiff[s'] choice of forum based on a lack of physical ties to Delaware." *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. 18-2019 (RGA), 2019 WL 2270440, at *2 (D. Del. May 28, 2019). This Court follows the reasoning in *Burroughs Wellcome*, in which Judge Stapleton found that the Third Circuit's rule that plaintiff's choice is of paramount consideration is "an across-the-board rule favoring plaintiff's choice of forum." 392 F. Supp. at 762-63; *see also VLSI Tech. LLC v. Intel Corp.*, No. CV 18-966-CFC, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018). As Judge Stapleton noted, "assuming [plaintiff's choice] is to be given some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state." *Burroughs Wellcome*, 392 F. Supp. at 763 n.4. This Court does not see a distinction here that justifies affording less weight to Plaintiff's choice of forum. And as to Defendant's argument that Plaintiff's choice is entitled to less deference because it first sued Defendant in the Northern District of Illinois, the Court disagrees. Defendant cites no cases to support this argument, and the Court is not persuaded that the initial suit filed elsewhere has any bearing on this factor, particularly when Plaintiff voluntarily dismissed that first case in favor of filing here where venue is proper. (*See* D.I. 19 at 12). Plaintiff's choice to litigate in Delaware remains entitled to paramount consideration.

      2.    Defendant's Forum Preference

This factor favors transfer. Defendant's interest in having this case transferred to the Western District of New York is apparent.

9

### 3. Whether the Claims Arose Elsewhere

This factor weighs in favor of transfer. Defendant contends that this factor weighs "heavily" in favor of transfer because the purportedly infringing "use" under § 271(a) did not occur in Delaware. (D.I. 13 at 13). Plaintiff alleges that Defendant infringes claim 1 of the '304 Patent by "using (including through testing and demonstrations)" the Accused Instrumentality but, according to Defendant, there is and has been no infringing use by Defendant in Delaware. (*Id.*; *see also* D.I. 14, Ex. A ¶¶ 9-11). In Defendant's view, Plaintiff's claim of direct infringement "most naturally" arose in Rochester, New York where the Accused Instrumentality was developed (D.I. 13 at 13; *see also* D.I. 14, Ex. A ¶ 4) and presumably where at least testing occurred during that development process. In response to this argument, Plaintiff simply argues that "Defendant's international operations render this factor neutral." (D.I. 19 at 13).

Patent-infringement claims arise wherever alleged infringement has occurred. *See Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (citing 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)). Plaintiff only asserts direct infringement of a method claim and the law is clear that making, selling, offering to sell or importing the Accused Instrumentality cannot – as a matter of law – constitute direct infringement of claim 1 of the '304 Patent within the meaning of § 271(a). *See, e.g.*, *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003) ("The sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)."). Plaintiff accuses Defendant's use of the Accused Instrumentality as the activity constituting direct infringement (*see* D.I. 1 ¶¶ 13-17),

but Plaintiff does not offer any meaningful argument that any purportedly infringing use by Defendants occurred in Delaware (*see* D.I. 19 at 13). Under the circumstances here, the Court finds that the patent-infringement claim most naturally arose in the Western District of New York. Thus, this factor weighs in favor of transfer.

          4.         Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is neutral. Determining convenience of the parties requires the Court to consider: (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal. *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)). Because Defendant is a Delaware company, it "must prove that litigating in Delaware would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d 320, 325 (D. Del. 2013) (alteration in original) (internal quotation marks and citation omitted); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Defendant argues that transferring to the Western District of New York would be more convenient because "relevant witnesses and records are located in New York" and because of the "financial efficiency [in] litigating in the forum of its headquarters." (D.I. 13 at 13-14;

11

*see also* D.I. 14, Ex. A ¶¶ 12-15). Defendant also argues that Plaintiff "is no stranger to litigation" and therefore there is "no indication" that it would be less convenient for Plaintiff to litigate in the Western District of New York. (D.I. 13 at 14; *see also* D.I. 21 at 8). Notably, however, Defendant does not argue that this factor favors transfer, instead arguing only that it "does not weigh against transfer." (D.I. 13 at 14). In opposition, Plaintiff asserts that Defendant's "size and choice to litigate in this district as a defendant in another case" suggest that litigating this case here is not inconvenient for Defendant.[6] (D.I. 19 at 14).

Given that Defendant is a Delaware company, it must demonstrate that litigating here "would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings*, 964 F. Supp. at 325. Defendant simply asserts that it would be more convenient to litigate in New York because that is where it is headquartered and where relevant documents and witnesses are located. Even if these reasons do make that district more convenient, the Court is unable to conclude that Defendant cannot shoulder the burden of litigating here instead or that this would present some unique hardship on Defendant. Litigation carries an inherent burden, but Defendant has failed to show it would suffer a unique burden here. This conclusion is bolstered by the fact that the Court anticipates the majority of discovery will likely occur in a place agreed upon by the parties and that this litigation is unlikely to proceed through to a trial (as is true for most cases). *See, e.g.*, *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168 (LPS) (CJB), 2016 WL 8677211, at *7 (D. Del. Sept. 23, 2016) ("[A]ny additional inconvenience to [Defendant's] employee witnesses in traveling to Delaware for pre-trial or trial proceedings is diminished by the fact that the amount of such travel is not likely to be large – particularly if the case (as most do)

---

[6] Defendant disputes the point about its size, arguing that the company Plaintiff identifies in its analysis is actually Defendant's parent with no explanation of how that would impact the litigation costs borne by Defendant here. (D.I. 21 at 8 n.6).

resolves prior to trial."); *Graphics Props. Holdings*, 964 F. Supp. 2d at 328 ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties."); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012) ("It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will ***not*** actually go to trial." (emphasis in original)), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

Finally, as to Defendant's argument that Plaintiff would not be inconvenienced by litigating in the Western District of New York, the Court notes that Plaintiff "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs., Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012). Thus, this factor is neutral.

### 5. Convenience of the Witnesses

This factor is neutral. This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")). "[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998). "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I*, 842 F. Supp. 2d at 757.

Defendant argues that all relevant witnesses are located in Rochester, New York and no relevant witnesses are likely to be found in Delaware. (D.I. 13 at 15; *see also* D.I. 14, Ex. A ¶¶ 4,

13

12 & 14-16). Defendant also asserts that it has identified one former employee who "may be a relevant witness" and that former employee also resides in the Rochester area. (D.I. 13 at 15; *see also* D.I. 14, Ex. A ¶ 15). According to Defendant, that witness would be outside the subpoena power of this Court should his testimony be necessary for trial. (D.I. 13 at 15). In Defendant's view, because the relevant witnesses are located in Rochester, New York and there may potentially be one former employee outside the subpoena power of this Court, this weighs in favor of transfer. (*Id.*). Plaintiff argues that Defendant's witnesses who are employees have no bearing on this factor, and Plaintiff raises questions about the former employee identified by Defendant. (D.I. 19 at 15). In particular, Plaintiff notes that there is no showing that this former employee's testimony would be necessary for trial, that such testimony could not be obtained from a current employee or that this witness may be unavailable for trial in either forum. (*Id.*). In Plaintiff's view, this factor is neutral. (*Id.*).

The Court agrees that Defendant's arguments about its employees located in Rochester have minimal bearing on this factor. And as to the single former employee identified by Defendant as outside the subpoena power of this Court, the Court cannot conclude that this weighs in favor of transfer. Defendant discusses this witness in only speculative terms – *i.e.*, he may be a relevant witness, his testimony may prove necessary, etc. Moreover, beyond whether this witness will actually be relevant in this case, Defendant has failed to show that this former employee would be unavailable for trial in Delaware, which is the paramount consideration under this *Jumara* factor. *See Jumara*, 55 F.3d at 879. The subpoena power of this Court is a consideration relevant to ensure appearance at trial but there is no evidence in the record that this witness would not appear for trial without a subpoena. *See Puff Corporation v. Kandypens, Inc.*, No. 20-00976-CFC, 2020 WL 6318708, at *4 (D. Del. Oct. 28, 2020) (finding this factor neutral where there was no evidence

14

that third-party witnesses in California and Arizona would refuse to appear for trial in Delaware without a subpoena); *see also Intellectual Ventures I*, 842 F. Supp. 2d at 758 ("If this case turns out to be one of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact witnesses with material, non-cumulative evidence will voluntarily appear at trial."). Therefore, the Court ultimately concludes that this factor is neutral.

      6.      Location of Books and Records

This factor slightly favors transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant argues that this factor favors transfer because "[r]ecords relevant to the development and use of the Orbit device" are located in the Western District of New York and no relevant documents "are likely" to be located in Delaware. (D.I. 13 at 16; *see also* D.I. 14, Ex. A ¶¶ 13 & 16). In its opposition, Plaintiff argues that this factor is neutral, focusing on the fact that Defendant has failed to demonstrate that any documents could not be produced in Delaware or that there would be a burden in producing those documents here. (D.I. 19 at 16). Plaintiff also argues that Defendant's lead attorneys are located in Georgia and that any documents would "likely go through Georgia prior to production." (*Id.*). Defendant does not address this factor in its reply.

Although the Court agrees that Defendant has failed to demonstrate some evidence could not be produced here, Defendant has shown that much of the relevant evidence is either located in or more easily produced the Western District of New York. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). That being said, the Third Circuit has

15

instructed that the relevant consideration here is whether the evidence could not be produced in the competing fora. *See Jumara*, 55 F.3d at 879. With the state of technology in litigation today and the ease with which documentary evidence can be produced electronically, the Court finds that this factor – although favoring transfer – should be afforded minimal weight. *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intellectual Ventures I*, 842 F. Supp. 2d at 759. Therefore, this factor weighs in favor of transfer but only very slightly.

### 7. Enforceability of the Judgment

This factor is neutral as judgments from this District and the Western District of New York are equally enforceable.

### 8. Practical Considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant argues that this factor weighs in favor of transfer because Plaintiff has no ties to Delaware, Defendant is headquartered in the Western District of New York where evidence and witnesses are located, and the COVID-19 pandemic adds risk for Defendant's witnesses to travel to Delaware.[7] (*See* D.I. 13 at 16-17). In response, Plaintiff argues that Defendant is largely repeating its arguments for other factors. (D.I. 19 at 16). The Court agrees with Plaintiff on this point. Most of Defendant's contentions "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015).

---

[7] The Court recognizes the risk that the COVID-19 pandemic poses in terms of witnesses traveling but technology has significantly reduced this risk – *e.g.*, remote depositions, remote hearings, etc.

16

Plaintiff also argues that there are efficiencies in keeping this case here because "there are three cases brought by Magnacross involving the same patent-in-suit pending in this Court (including this case)." (D.I. 19 at 16-17). Defendant identifies "two recently filed" cases pending at the time its reply was filed and argues that "[t]hose cases are not likely to actually proceed in Delaware." (D.I. 21 at 9-10). Although the presence of related cases is an appropriate factor to consider, the focus is on related cases pending when this case was filed or the Court's prior experience with the same or similar subject matter. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("[A] district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."). Based on this Court's review of the dockets of related cases, no related cases were pending at the time this case was filed and the Court's involvement in the earlier-filed matters was minimal.[8] Thus, considerations of judicial economy arising from related cases are not relevant here and this factor remains neutral.

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[9] as of March 31, 2020, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 29.3 months and the median length of time between filing and disposition in civil cases is 5.3 months. In the Western District of New York,

---

[8] Related cases were also filed after this case began, but those later-filed cases have no bearing on this factor. *See In re EMC Corp.*, 501 F. App'x at 976 ("While considerations of judicial economy arising *after* the filing of a suit do not weigh against transfer, a district court may properly consider any judicial economy benefits which would have been apparent at the time the suit was filed." (emphasis in original)).

[9] The March 2020 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2020.pdf.

17

the median lengths of time in civil cases between filing and trial and filing and disposition are 57.3 months and 15.0 months, respectively. The March 31, 2020 profile also indicates that there are 621 cases pending per judgeship in the District of Delaware, whereas there are 1,020 cases pending per judgeship in the Western District of New York. As Defendant points out, however, Delaware has 1,047 weighted filings per judge compared to 630 in the Western District of New York. (D.I. 21 at 10). These statistics suggest that the two districts are both heavily congested and therefore this factor is neutral.

          10.       Local Interest in Deciding Local Controversies at Home

This factor is neutral. Defendant argues that this factor "does not weigh against transfer" (D.I. 13 at 18) and Plaintiff argues that this factor is neutral because there is no showing that the Western District of New York has any local interest (D.I. 19 at 17-18). "[I]n patent infringement cases the local interest factor is typically neutral 'because patent issues do not give rise to a local controversy or implicate local interests.'" *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011) (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)).

          11.       Public Policies of the Fora

The parties contend that this factor is neutral. In the Court's view, however, this factor weighs slightly against transfer because Defendant is a Delaware Limited Liability Company and public policy encourages Delaware entities to resolve disputes in Delaware courts. *See, e.g.*, *Graphics Props. Holdings Inc.*, 964 F. Supp. 2d at 331 (even where only one party is a Delaware corporation, public policy encouraging Delaware corporations to resolve disputes in Delaware weighs against transfer). There is no similar argument for the Western District of New York as neither party is a New York company.

        12.      <u>Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases</u>

The parties agree that this factor is neutral because Plaintiff's claims arise under federal patent laws and the familiarity of the respective districts with state law is not applicable.

        13.      <u>Balancing the Private and Public Factors</u>

After balancing the twelve *Jumara* factors, the Court concludes that this case should not be transferred to the Western District of New York. Seven factors are neutral, and three factors weigh in favor of transfer, with one being given minimal weight. Two factors also weigh against transfer, including Plaintiff's choice of this forum, which is to be given paramount consideration. Looking at the factors together and giving each its appropriate weight, Defendant has failed to meet the heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, to transfer the case to the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a) is DENIED. An appropriate order will be entered.